IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BETHANY GUIDRY, | § § | |
| Plaintiff, | § § | |
| v. | § § | |
| FUNDAMENTAL ADMINISTRATIVE SERVICES, LLC; | § § § | CIVIL NO. 1:23-CV-270 |
| THI OF TEXAS, LLC; | § § § | |
| AND | § § | |
| RETAMA MANOR DEL RIO, LLC D/B/A FALCON RIDGE REHABILITATION AND CARE CENTER. | § § § § § | |
| Defendants. | | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Bethany Guidry sues Fundamental Administrative Services, LLC, THI of Texas, and Retama Manor Del Rio (collectively referred to as "Fundamental") for disability discrimination and retaliation. Ms. Guidry was an exemplary employee that always gave her best efforts to Fundamental, and the residents it served. Unfortunately, Ms. Guidry was diagnosed with Multiple Sclerosis in October 2018 and requested a reasonable accommodation of maintaining a work schedule of 40 hours per week. As a result, Fundamental retaliated against her. The retaliation was so apparent that the then-current Human Resources manager warned Fundamental that its actions constituted retaliation under the law. Ultimately, Defendants' retaliation and discrimination got so

bad that even Guidry's doctor warned that her health would be in jeopardy if it continued. Since Defendants indicated no intention of ceasing its discriminatory and retaliatory conduct, Guidry was forced to resign her position.

## I.    PARTIES

1. Plaintiff Bethany Guidry is an individual who resides in Boulder County, Colorado.

2. Defendant Fundamental Administrative Services, LLC ("FAS") is a foreign for-profit entity registered and conducting business in the state of Texas. It may be served with process through its registered agent for service of process in the state of Texas, Corporation Service Co., 211 E. 7th St., Ste. 620, Austin, TX 78701.

3. Defendant THI of Texas is a foreign for-profit entity registered and conducting business in the state of Texas. It may be served with process through its registered agent for service of process in the state of Texas, Corporation Service Co., 211 E. 7th St., Ste. 620, Austin, TX 78701.

4. Defendant Retama Manor Del Rio, LLC ("Retama") is a foreign for-profit entity registered and conducting business in the state of Texas. It may be served with process through its registered agent for service of process in the state of Texas, Corporation Service Co., 211 E. 7th St., Ste. 620, Austin, TX 78701.

## II.    JURISDICTION AND VENUE

5. Personal jurisdiction over FAS, THI of Texas, and Retama is appropriate because at all times relevant to Plaintiff's claims, all three entities were doing business in the State of Texas as defined by the Texas Long Arm Statute, contained in Section 17.042 of the Texas Civil Practice and Remedies Code by recruiting Texas residents for employment inside the State of Texas through their various locations throughout the state (including Plaintiff's workplace in

Williamson County). Further, an exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

6. Defendants are an employer within the meaning of the Americans with Disabilities Act, as amended.

7. This Court has jurisdiction to hear the merits of the federal claims under 28 U.S.C. § 1331, and venue is proper in the district and division under 28 U.S.C. § 1391(b).

### III. FACTS

8. Guidry began working for Fundamental on or about August 28, 2017 as the executive chef for the Falcon Ridge Rehabilitation and Care facility ("Falcon Ridge").

9. While she was working out of Falcon Ridge, all three defendants maintained substantial direct and immediate control over one or more essential terms and conditions of Guidry's employment.

10. For example, FAS provided part of the Human Resource services for Retama, so if Guidry wanted to report a violation of law, she would have to report it to FAS. Further, it was FAS' legal department that initially represented Retama when Guidry first retained counsel.

11. Moreover, FAS exercised control over Guidry's work when it would send its employees to monitor her work. By way of example, Holly Sessums, an employee of FAS, would periodically stop at Falcon Ridge to inspect Guidry's work. On multiple occasions, Guidry was instructed to go to other FAS facilities to train its staff. For example, on two occasions she was sent to Estrella Oaks Rehabilitation & Care in Georgetown, Texas and to another facility in Cedar Park, Texas.

12. Another example is that THI of Texas was the entity which held the account for Guidry's worker's compensation benefits. Many of Retama's employees were also employees of THI of Texas.

13. With the exception of the events detailed below, Guidry's performance can only be described as exceptional.

14. In October 2018, Guidry was diagnosed with Multiple Sclerosis ("MS").

15. As a direct result of her MS, Guidry would often have the right side of her body become numb, suddenly get dizzy, constantly feel fatigued, and get muscle spasms in her back.

16. Due to her disability, Guidry's doctor informed her that she could only work 40 hours a week.

17. Guidry followed her doctor's advice and informed her supervisor, Geoffrey Chudleigh, of that fact. At that time, the requested reasonable accommodation was granted without any problems.

18. At the end of November 2018, Mr. Chudleigh left Fundamental.

19. On or about December 1, 2018 Ms. Kendra Reneau took over as Guidry's direct supervisor.

20. As soon as Ms. Reneau became Guidry's direct supervisor, she began forcing Guidry to work over 40 hours a week.

21. In response to Ms. Reneau's refusal to honor her reasonable accommodation, Guidry decided to formalize her request.

22. On December 20, 2018, Guidry submitted to Ms. Reneau and Kathy Childress, former HR Director of Retama and employee of THI of Texas, a copy of a letter signed by her doctor outlining her restrictions and reasonable request for an accommodation consisting of only working 40 hours a week.

23. In that letter her doctor specifically stated that she could not work "more than 40 hours of work per week as this will worsen her cognitive difficulties and painful spasms."

24. Despite her renewed request for a reasonable accommodation that was supported with her doctor's letter, Ms. Reneau ignored it.

25. By way of example, for most of January 2019 Guidry worked over 40 hours a week.

26. On January 2019, Guidry complained to the Regional HR Director of FAS, Sabrina Jenkins, that she was being discriminated against because of her disability.

27. Nothing was done.

28. In fact, Ms. Jenkins admitted to the EEOC that she did not even complete an investigation report.

29. As a result of being continuously overworked, Guidry suffered an accident on the job in February 2019.

30. Specifically, she fainted and hit her head falling down.

31. As a result of the head trauma Guidry suffered, she had to be admitted to the hospital.

32. Instead of being concerned for her subordinate, Ms. Reneau continued to try to work Guidry continuously by taking her laptop to the hospital so that Guidry could continue working.

33. After that episode, Guidry tried to get further help by requesting intermittent leave under the Family Medical Leave Act, but this request was not honored.

34. In fact, the only thing that Guidry received in response to her complaints of discrimination and requests for reasonable accommodations was retaliation.

35. On April 8, 2019, Guidry was written up for receiving a deficiency letter from a state inspection.

36. Yet, despite the fact that other departments were given deficiency letters as well after the state inspection, Guidry was the only one written up for it.

37. In response to that reprimand, Guidry outlined how she believed the write up was retaliation and discriminatory.

38. Ten days later, Guidry was once again written up and suspended on demonstratively false reasons. The reason given for this was action was that she allegedly yelled at a certified nursing assistant.

39. Yet, despite being told that the yelling incident would be investigated, no investigation ever took place.

40. During this period, Ms. Childress the former Human Resource Manager, kept on informing Ms. Reneau that her actions were discriminatory.

41. In fact, Ms. Childress outlined to the EEOC that she herself witnessed Ms. Reneau overworking Guidry, issuing "bogus write ups," and flat out ignoring the law. Moreover, Ms. Childress also stated to the EEOC that the Director of HR, Ms. Jenkins, never talked to her about Guidry's requests for reasonable accommodations. Ultimately, Ms. Childress began to be the victim of retaliation because she stood up for Guidry's rights under the ADA.

42. Specifically, Ms. Childress further stated to the EEOC that Ms. Reneau would even "get Holly [Sessums]-the Corporate Dietician to be part of the write-up meeting when she provided it to [Guidry]."

43. Further, Ms. Childress stated to the EEOC that "she constantly informed Kendra [Reneau] that she was violating [Guidry's] restrictions, and it was against the law and it did not change anything."

44. Furthermore, Fundamental's continual abuse of Guidry led her to seek her doctor's assistance in informing them of the dangers of continuing to overwork her.

45. Specifically, Guidry's doctor stated on May 16, 2019:

> Bethany Guidry has the following restrictions: no more than 40 hours of work per week as this will worsen her cognitive difficulties and painful spasms. This was written in December 2018 and reiterated today, as to my understanding these medical accomodations have not been honored. Continue excessive work hours will lead to neurologic worsening including additional falls such as the one she had while working at your facility in February 2019.

46. Not even a month after her doctor's letter, on June 6, 2019, Guidry was written up again on manifestly false allegations.

47. Moreover, Fundamental continued to overwork Guidry. As a result, her condition began to worsen drastically.

48. In short, continuing to work for Fundamental, where her complaints were ignored, where her health continued to worsen as a direct consequence of their actions, would put Guidry's health in serious jeopardy.

49. On October 4, 2019, Guidry was forced to resign because, as she stated in her resignation letter, the "work conditions…are detrimental to [her] health." She went on to stated that she feared for her health and quality of life.

50. Guidry filed charges of discrimination with the EEOC and TWC on May 13, 2019.

51. On September 30, 2022, the EEOC issued a determination finding that it was more likely than not that "[Defendants] failed to provide [Guidry] a reasonable accommodation, created a hostile work environment, and retaliated against her for engaging in protected activity in violation of the American with Disabilities Act, of 1990, as amended."

52. On December 29, 2022, the EEOC deemed that conciliation had failed and issued the right to sue.

53. All conditions precedent to bringing this lawsuit have been satisfied.

### IV. DISABILITY DISCRIMINATION UNDER THE ADAAA

54. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

55. As described above, Defendants' actions constitute unlawful discrimination on the basis of Plaintiff's disabilities in violation of the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq*. ("ADAAA").

56. The employment practices complained of above were intentional as can be evidenced by the fact that human resources informed them that their actions were violating the law.

57. Plaintiff had disabilities within the meaning of the ADAAA at the time of the adverse actions against her.

58. Defendants are engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

59. Plaintiff was qualified for her position at the time she was terminated.

60. Plaintiff suffered an adverse employment action when, among other things, she was terminated by Defendants.

61. Plaintiff was terminated because of her disability.

62. Furthermore, Defendants refused to provide reasonable accommodations for Plaintiff's disabilities prior to terminating her even though they were aware of her disabilities and her need for accommodation.

63. Because of Defendants' actions, Plaintiff has suffered damages within the jurisdictional limits of this Court.

V. RETALIATION UNDER THE ADAAA

64. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

65. Plaintiff is an employee within the meaning of the ADAAA.

66. Defendants are an employer within the meaning of the ADAAA, are engaged in an industry affecting commerce, and have fifteen or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

67. Plaintiff was qualified for her position at the time she was terminated.

68. Plaintiff engaged in protected activity when she complained of discrimination based on her disabilities and when she made requests for reasonable accommodation.

69. Plaintiff suffered an adverse employment action when, among other things, she was terminated.

70. Defendants took these adverse actions because of her engagement in protected activity.

71. Defendants violated the ADAAA's anti-retaliation provision when they intentionally terminated Plaintiff because of her engagement in protected activity.

## VI. FAILURE TO ACCOMMODATE UNDER THE ADAAA

72. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

73. As described above, Plaintiff made several requests for a reasonable accommodation when she requested to work no more than 40 hours a week.

74. Plaintiff had received this same accommodation before in the past without any issues. Thus, it was reasonable, and it did not create an undue burden on Defendants.

75. Defendants failed to provide a reasonable accommodation to Plaintiff.

76. Because of Defendants' actions, Plaintiff has suffered damages within the jurisdictional limits of this Court.

## IIX. JURY DEMAND

77. Plaintiff hereby makes a demand for a trial by jury on all issues, claims and defenses in this action.

## IX. PRAYER

78. WHEREFORE, Plaintiff Bethany Guidry requests that Defendants be cited to appear and answer, and that, after trial by jury, she takes judgment against Defendants as follows:

   a. Judgment against Defendants ordering them to take such reasonable actions as may be necessary to remedy the effects of Defendants' violations of the ADAAA;

   b. Judgment against Defendants for lost wages and benefits, both back pay and front pay;

   c. In the alternative to front pay, judgment against Defendants placing Plaintiff in the position of employment she would have enjoyed but for the discrimination, if deemed feasible;

   d. Judgment against Defendants for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

   e. Judgment against Defendants for punitive damages to the extent allowed under the law;

   f. Pre-judgment interest at the appropriate legal rate on all amounts awarded;

   g. Interest after judgment at the appropriate legal rate on all amounts awarded until paid in full;

   h. Judgment against Defendants for Plaintiff's reasonable attorneys' and experts' fees;

i. Costs of suit; and

j. Such other and further relief to which Plaintiff may justly be entitled.

        Respectfully submitted,
        WILEY WALSH, P.C.

        By: /s/ Jairo Castellanos

        Robert J. Wiley*
        Texas Bar No. 24013750
        Colin Walsh*
        Texas Bar No. 24079538
        Jairo Castellanos*
        Texas Bar No. 24089264

        *Board Certified Specialist, Texas Board of Legal Specialization, Labor and Employment Law*

        Wiley Walsh, P.C.
        1011 San Jacinto Blvd., Ste. 401
        Austin, TX 78701
        Telephone: (512) 27-5527
        Facsimile: (512) 287-3084
        jairo@wileywalsh.com
        **Attorneys for Plaintiff**